CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
March 12, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
  DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **JAQWAIL VAKEITH BRAXTON,** | )<br>) |
| Plaintiff, | ) Case No. 7:25CV00071<br>) |
| v. | ) **OPINION AND ORDER**<br>) |
| **CORRECTIONAL OFFICER DUSTIN CASEY, et al.,** | ) JUDGE JAMES P. JONES<br>)<br>) |
| Defendants. | ) |

*Jaqwail VaKeith Braxton, Pro Se Plaintiff; D. Patricia Wallace, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Defendants.*

The plaintiff, a Virginia inmate proceeding pro se, has filed a civil rights action under 42 U.S.C. § 1983, alleging that the defendants violated his Eighth and Fourteenth Amendment rights.[1] Specifically, Braxton alleges that he was physically assaulted on July 21, 2024, while housed at Keen Mountain Correctional Center.[2] He claims that while he was being restrained by defendants Blankenship, Elswick, and Yates, defendant Casey released a canine, which bit him multiple times while the officers continued to assault him. As a result, he contends that he has suffered

---

[1] I previously severed and dismissed certain claims and defendants. *See* Op. & Order 18–20, Dkt. No. 33. Therefore, only Braxton's claims against Blankenship, Elswick, Yates, and Casey regarding a physical assault that occurred on July 21, 2024, previously identified as claims 1, 2, and 3, are relevant here.

[2] Braxton has since been transferred to Wallens Ridge State Prison.

physical, mental, and emotional harm. Currently pending is the defendants' Motion for Summary Judgment, by which the defendants argue that Braxton has failed to exhaust his administrative remedies. Braxton has filed a response, and the matter is ripe for review. In consideration of the record and arguments submitted by the parties, I conclude that the Motion for Summary Judgment must be denied.

## I. DISCUSSION.

### A. Summary Judgment Standard.

The Federal Rules of Civil Procedure provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court must view the facts and justifiable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013). To withstand a summary judgment motion, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. Exhaustion of Administrative Remedies.

Under the Prison Litigation Reform Act (PLRA), a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. 42 U.S.C. § 1997e(a). This exhaustion requirement is

"mandatory," *Ross v. Blake*, 578 U.S. 632, 638 (2016), and "applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the prison facility provides to its inmates and meet all deadlines within that procedure. *Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006). While inmates must exhaust all available administrative remedies, they "need not exhaust unavailable ones." *Ross*, 578 U.S. at 642.

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, either that exhaustion occurred or that administrative remedies were unavailable through no fault of the inmate. *See, e.g.*, *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011); *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Therefore,

> an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is 'so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a

grievance process through machination, misrepresentation, or intimidation."

*Woodhouse v. Duncan*, 741 F. App'x 177, 178 (4th Cir. 2014) (unpublished) (quoting *Ross*, 578 U.S. at 643–44).

      i.    Virginia Department of Corrections Operating Procedure.

The Virginia Department of Corrections (VDOC) Operating Procedure (OP) 866.1, provides the administrative process for resolving inmate written complaints and grievances. The defendants have included the OP as Enclosure A to the Declaration of H. Hardon, attached as Exhibit 1 to their Memorandum in Support of their Motion for Summary Judgment.

Before formally grieving the issue, the inmate must initiate an informal complaint process, which starts with a verbal complaint to a VDOC staff member. If the issue cannot be resolved, then the inmate can request and submit an informal written complaint. The written complaint must be received by the Institutional Ombudsman within fifteen days of the original incident or discovery of the incident. "Within 15 days of logged receipt, responding staff should seek resolution of the *Written Complaint* and prepare a written response to include any corresponding outcome(s)." Mem. Supp. Mot. Summ. J. Ex. 1, Enclosure A at 5, Dkt. No. 55-1.

Then, "[i]f the inmate is dissatisfied with staff's response or 15 days have passed without a response to their *Written Complaint*, the inmate may elect to file a Regular Grievance." *Id.* Enclosure A at 6, Dkt. No. 55-1. The grieved issued must

"[b]e identical to and limited to the issue submitted on the *Written Complaint*." *Id.* Enclosure A at 7, Dkt. No. 55-1. The grievance must be submitted within thirty days from the date of the original incident.

As relevant here, "[i]f the *Inmate Grievance Response - Level I* is not returned to the inmate within 30 days and an authorized continuance was not issued, the inmate can appeal to the Regional Ombudsman in writing including copies of the grievance receipt and other supporting documentation." *Id.* Enclosure A at 10, Dkt. No. 55-1.

Under the Grievance Appeal Process section, the OP explains that "[t]he *Inmate Grievance Response – Level I* includes a section for the inmate to appeal their grievance response," and advises that "[o]nly the issue included in the Regular Grievance will be considered on appeal." *Id.* Enclosure A at 11, Dkt. No. 55-1. Furthermore, "[i]f the inmate does not agree with the grievance response, disposition of the grievance, or the remedy, the inmate may submit an appeal" to include the following information:

> (a) An explanation of what is being appealed (the response, disposition, or remedy).
> (b) An explanation of how the institution's determination does not address the issue.
> (c) Suggest an appropriate remedy.
> (d) Sign and date the appeal section on the *Inmate Grievance Response – Level I*.

*Id.*

Finally, a response must be provided within twenty days of receipt of the appeal. However, "if the *Inmate Grievance Response – Level II* is not returned to the inmate within 20 days and an authorized continuance is not issued, the inmate may then seek judicial relief." *Id.* Ex. 1, Enclosure A at 12, Dkt. No. 55.

ii.   Braxton's Exhaustion Efforts.

The record reveals that following the alleged assault on July 21, 2024, Braxton "orally complained to Sgt. Boyd . . . he told [Braxton] to 'write it up.'" Pl.'s Resp. Mot. Summ. J. Decl. at 1, Dkt. No. 57-1. Seven days later, Braxton submitted two relevant written complaints. The first, numbered KMCCC-24-WRI-01600, referenced his canine bite injuries but primarily complained about cell conditions. The second, numbered KMCC-24-WRI-01601, is summarized by the Inmate Grievance log as follows:

> Inmate states Lt. Blankenship and Officer Casey used extreme force while attempting to restrain me. LT Blankenship intentionally held me up when Officer Casey told me to "lay down or the dog would bite me" I could not lay down because I was literally being held up (by both arms) by LT. Blankenship and 3 other officers which was obvious an[d] very intentional. Officer Casey then made his canine bite me 3 times while simultaneously punching me (with a closed fist) in my face and my testicles multiple times, as I was being actively bitten by his canine and held by four officers preventing me from laying down). The video evidence will very obviously support this claim of use by extreme excessive force and will negate any possible claims that they acted within the scope of their duties.

Mem. Supp. Mot. Summ. J., Ex. 1, Enclosure B at 40, Dkt. No. 55-1. The defendants do not dispute that this written complaint concerned the alleged use of force that

occurred on July 21, 2024. Although Braxton states that he never received a response to KMCC-24-WRI-01601, it appears from the record that K9 Sgt. Ball responded on July 30, 2024, stating that "[t]he incident has already been reviewed and cleared by K9 leadership. Patrol canines are assigned to this facility for staff and inmate safety." *Id.* Enclosure B at 40 & Enclosure C, Dkt. No. 55-1.

In any event, Braxton submitted a regular grievance, numbered KMCC-24-REG-00082, which was accepted at intake on August 8, 2024. Although the defendants argue that Braxton did not elevate the issue raised in KMCC-24-WRI-01601 to a Level I review, the Inmate Grievance log summarized the KMCC-24-REG-00082 submission as a "[g]rievance regarding incident between Lt. Blankenship and KP Handler D. Casey." *Id.* Enclosure B at 39. A Level I response was logged as being sent to Braxton on November 21, 2024. *Id.* Enclosure B at 38. Notably, Braxton claims that before receiving the subject Motion for Summary Judgment and its attachments, he had never seen this document. Pl.'s Resp. Mot. Summ. J. Decl. at 2, Dkt. No. 57-1. The Level I response referenced "Grievance Number: KMCC-24-REG-00082" and "Written Grievance Number: KMCC-24-WRI-01601." It provided the following:

> **In the grievance you state:** In summary, you allege that several written complaints have went unanswered regarding an incident that took place involving K9 handlers and security staff.
>
> **Response:** Upon review, you have attached written complaint #KMCC-24-WRI-01600. In response to your grievance, Chief Security

> Major S. Whaley has stated the following, "*This issue currently under review by SIU.*" Keen Mountain has no clarification of when SIU will be done investigating and can give a final report. Based on the information given by Inmate Braxton and Major S. Whaley, this grievance is deemed **INDETERMINALE** [sic].

*Id.* Enclosure E, Dkt. No. 55-1.

The defendants assert that even if KMCC-24-REG-00082 had been treated as an elevation of KMCC-24-WRI-01601 to Level I review, Braxton did not then elevate KMCC-24-REG-00082 to a Level II review and, thus, did not exhaust his administrative remedies. In response, however, Braxton points to Exhibit A of his Amended Complaint, where he provides evidence that he mailed a grievance to the Regional Ombudsman. Am. Compl. Ex. A, Dkt. No. 26-1. The grievance, dated October 21, 2024, indicated that it was related to the July 21, 2024, incident. *Id.* at 3. Therein, Braxton complained as follows:

> I still have not received a response to my KMCC-24-REG-00082 grievance to which a response was due by 9/7/24. I have been notified by the WRSP Institutional Ombudsman on 10/1/24 that no grievance response has been submitted (WRSP-24-WRI-06083)[3] thus violating Operational Procedure 866.1 (Section F, #2) because I was never issued a grievance continuance receipt. This is my second attempt at submitting this document, my first was on 9/30/24 (the same day I received my property from KMCC) . . . I just want the truth to be acknowledged. Then justice be served.

---

[3] Written complaint number WRSP-24-WRI-06083 explained that Braxton had not received a response to his grievance and requested a copy so he can timely proceed to the next step in the procedure as he didn't have his property upon being transferred to a new facility. Mot. Summ. J. Ex. A, Enclosure B at 33, Dkt. No. 55-1.

*Id.* Attached to this grievance was a Grievance Receipt, which referenced "Grievance Number: KMCC-24-REG-00082" and "Written Grievance Number: KMCC-24-WRI-01601." *Id.* The Grievance Receipt described the matter as a "[g]rievance regarding incident between Lt. Blankenship and K9 Handler D. Casey." *Id.* According to Braxton he has not received a response from the Regional Ombudsman to date. The defendants do not address Braxton's submission to the Regional Ombudsman in their Motion for Summary Judgment and have not submitted a reply brief.[4]

Before filing this lawsuit, Braxton submitted another written complaint on November 12, 2024, asking for an update on grievance number KMCC-24-REG-00082 because he had not received a response. Mem. Supp. Mot. Summ. J. Ex. 1, Enclosure B at 29, Dkt. No. 55-1. A staff member responded that their records "show[] that the written was 01601 and the regular was 00082 and it was due on 9-7-24 . . . . We have not received this back for you yet, when we do we will forward it to you." *Id.*

Considering the foregoing, I conclude that the defendants have failed to meet their burden of proof to succeed on an exhaustion defense. First, the defendants do not dispute that Braxton made an informal verbal complaint, and according to his

---

[4] Under Rule 11 of the Virginia Federal Court Rules for the United States District Court for the Western District of Virginia, "the moving party may file a rebuttal brief within 7 days after the service of the opposing party's reply brief."

Declaration, Braxton did so before submitting a written complaint regarding the July 21, 2024, incident. The defendants, likewise, do not dispute that Braxton timely submitted an informal written complaint. Indeed, the record shows that Braxton submitted KMCC-24-WRI-01601, which describes the July 21, 2024, incident regarding the excessive force claimed in the present litigation, within the requisite fifteen-day deadline to do so. While Braxton asserts that he did not receive a response to this written complaint, a response was recorded on July 30, 2024.

Regardless of whether a response was received, Braxton filed a regular grievance, KMCC-24-REG-00082, within the thirty-day timeframe following the incident. While the defendants dispute whether this grievance was an elevation of the written complaint, the defendants' own exhibits show that KMCC-24-REG-00082 was considered a grievance related to written complaint number KMCC-24-WRI-01601. The defendants did not respond to KMCC-24-REG-00082 within the thirty-day deadline to do so and, in fact, did not respond for over three months with an "indeterminable" answer. Under the VDOC OP, Braxton was permitted to appeal this lack of response to the Regional Ombudsman. *See e.g., Jackson v. Colley*, No. 7:25CV00137, 2026 WL 446659, at *5 (W.D. Va. Feb. 17, 2026) (determining that, under the same VDOC OP, "a failure to respond to a Regular Grievance does not prevent an inmate from exhausting his administrative remedies, in that OP 866.1 allows an inmate who does not receive a timely response at any level to appeal to

the next level"). Although the defendants argue that Braxton did not raise KMCC-24-REG-00082 to Level II, they do not address Braxton's submission to the Regional Ombudsman and, thus, have failed to "show that the evidence is so one-sided that no reasonable factfinder could find that [Braxton] was prevented from exhausting his administrative remedies. *See Hill v. O'Brien*, 387 F. App'x 396, 399 (4th Cir. 2010).

Indeed, the evidence submitted to the court demonstrates that Braxton has followed his initial complaint through all available levels provided by the VDOC OP and that officials were provided with a full and fair opportunity to address his claims administratively. *See Moore v. Bennett*, 517 F.3d 717, 725 (2008) ("[A] prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond.") (quoting *Woodford*, 548 U.S. at 88)). Taking Braxton's allegations as true, he has not received a response to this day from the Regional Ombudsman, frustrating his efforts to resolve the issue prior to litigation in this court. *See Allah v. Virginia*, No. 2:10CV00075, 2011 WL 251214, at *5 (W. D. Va. Jan. 25, 2011) (determining that, although the plaintiff "grieved only the non-response" to his original request, the plaintiff's attempts were "sufficiently frustrated" and the defendant "failed to meet its required burden of proof to succeed

on its exhaustion defense"); *Lewis v. Washington,* 300 F.3d 829, 831–32 (7th Cir.2002) (deeming administrative remedies exhausted when prison officials failed to respond to inmate grievances because those remedies had become "unavailable"); *Hill*, 387 F. App'x at 401 (4th Cir. 2010) (concluding that "the district court is 'obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials'") (quoting *Aquilar–Avellaveda v. Terrell,* 478 F.3d 1223, 1225 (10th Cir.2007)). Therefore, the defendants' Motion to Summary Judgment must be denied, as they have failed to meet their burden to prove Braxton failed to exhaust his administrative remedies.

II. CONCLUSION.

Based on the foregoing, it is hereby **ORDERED** as follows:

1. The defendants' Motion for Summary Judgment, Dkt. No. 54, is **DENIED**; and

2. The defendants are **DIRECTED** to advise the court within 14 days as to whether they request an evidentiary hearing on their exhaustion defense. If no request is made, the court will deem the exhaustion defense waived and this matter shall proceed to trial as scheduled on April 22, 2026. In that event, the defendants will not be permitted to raise the issue of exhaustion at trial, considering that it is not intertwined with the merits of Braxton's underlying claims. *See Perttu v. Richards*, 605 U.S. 460 (2025).

It is so **ORDERED**.

                                  ENTER:  March 12, 2026

                                  /s/  JAMES P. JONES
                                  Senior United States District Judge